UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Beverly McNamar (Schmidt),

       Plaintiff,

v.

Commissioner of Social Security,
Michael J. Astrue,

       Defendant.

Civ. No. 09-3540 (PJS/JJK)

**REPORT AND RECOMMENDATION**

Beverly McNamar (Schmidt), *pro se* Plaintiff.

Lonnie F. Bryan, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Beverly McNamar (Schmidt) seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"), who granted Plaintiff's application for supplemental-security income, asserting that she should have been awarded benefits beginning in 1995. On September 20, 2010, Defendant filed a Motion to Dismiss (Doc. No. 22). This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be granted.

**BACKGROUND**

**I.     Procedural History**

Plaintiff protectively filed a supplemental-security-income application on August 20, 2008, alleging a disability-onset date of January 1, 2004.  (Doc. No. 24, Decl. of Patrick J. Herbst ("Herbst Decl.") ¶ (3)(f), Ex. 8.)  She pursued her claims through the hearing level, and on June 23, 2009, a hearing was held before an Administrative Law Judge ("ALJ").  (*Id.*)  On June 29, 2009, the ALJ issued a "fully favorable" decision—based on Plaintiff's August 20, 2008 application—adopting the findings of fact and reasons that he had stated at the June 23, 2009 hearing, and summarizing that he "found [Plaintiff] disabled as of August 20, 2008, the date [Plaintiff] stipulated [her] disability began,[1] because of a disorder of the spine, osteopenia, degenerative disc disease, and chronic pain, so severe that [Plaintiff is] unable to perform any work existing in significant numbers in the national economy."  (*Id.*)  On July 16, 2009, Plaintiff filed a Request for Review of the ALJ's decision, asserting that she did not state that her disability started in August 2008, but that her disability "happened over 15 yrs

---

[1]     It is unclear from the record before this Court what the ALJ meant by using the term "stipulated."  Plaintiff indicates that she never agreed that her disability began on August 20, 2008.  This Court assumes, however, that the ALJ used the term "stipulated" to mean that, at a minimum, Plaintiff had agreed that she was disabled as of the date that she filed her August 20, 2008 application. And because he was precluded from awarding supplemental-security-income benefits prior to her filing her application, she could "stipulate" that her disability began on that date.  In any regard, whether Plaintiff agreed with the ALJ that her disability began on August 20, 2008, has no effect on this Court's analysis or the outcome of Defendant's motion before this Court because, as a matter of law, the ALJ could not award benefits before August 20, 2008.

ago." (*Id.* at ¶ (3)(g), Ex. 9.) On November 3, 2009, the Appeals Council denied the request for review. (*Id.* at ¶ (3)(g), Ex. 10.) The ALJ's decision therefore became the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481. On December 11, 2009, Plaintiff timely filed the instant action with this Court. (Doc. No. 1.)

On December 14, 2009, the undersigned ordered Plaintiff to file an Amended Complaint that complied with the Federal Rules of Civil Procedure and to either pay the full filing fee or file an amended IFP application by January 11, 2010. (Doc. No. 4.) After that deadline had passed with no action having been taken, the undersigned issued a Report and Recommendation on January 26, 2010, recommending the action be dismissed without prejudice for failure to comply with the Court's Order. (Doc. No. 5.) On March 1, 2010, Plaintiff filed an amended IFP petition and additional materials. (Doc. Nos. 8, 9.) Based on Plaintiff's new submissions, United States District Court Judge Patrick J. Schiltz declined to adopt the undersigned Report and Recommendation, and referred Doc. Nos. 8 and 9 to the undersigned for review. (Doc. No. 10.) On March 30, 2010, after review of Plaintiff's newly submitted materials, the undersigned filed an Order instructing Plaintiff to file an Amended Complaint that complied with the requirements set forth within the Order by April 30, 2010. (Doc. No. 11.)

On April 27, 2010, presumably in an attempt to comply with the Court's Order, rather than filing an Amended Complaint in the current case, Plaintiff filed a Complaint in a new case. (Case. No. 10-cv-1814, Doc. No. 1.) In addition, a

3

new IFP application was filed and granted in this new case. (Case. No. 10-cv-1814, Doc. Nos. 2, 3.) On June 3, 2010, Judge Schiltz entered an Order consolidating the two actions, ordered the Clerk to copy the filings from Case No. 10-cv-1814 into this case (Case No. 09-3540), and to rename the Complaint that was filed in Case No. 10-cv-1814 as the "Amended Complaint" in Case No. 09-3540. (Doc. No. 13.) Judge Schiltz also ordered the Clerk to close Case No. 10-cv-1814, and ordered all further documents to be filed in Case No. 09-cv-3540. (Doc. No. 13.)

On June 8, 2010, an Amended Summons was issued, and the Amended Summons and Amended Complaint were served on Defendant on July 28, 2010. (Doc. No. 19.) On September 20, 2010, Defendant filed the present motion to dismiss. (Doc. No. 22.)

**II.     Plaintiff's Prior Applications with the Social Security Administration**

In addition to the August 20, 2008 supplemental-security-income application that is the subject of the appeal directly before this Court, Plaintiff had filed earlier applications with the Social Security Administration on three different occasions. Plaintiff's first application filed with the Social Security Administration was filed on April 11, 1995, for supplemental-security income. (Herbst Decl. ¶ (3)(a), Ex. 1.) On June 23, 1995, the state Disability Determination Service determined that Plaintiff was not disabled. (*Id.*) It does not appear that Plaintiff took any further action with respect to this application. (Herbst Decl. ¶ (3)(a).)

On August 11, 2004, Plaintiff filed applications for disability-insurance benefits and supplemental-security income. (Herbst Decl. ¶ (3)(b).) After pursuing her claims through the hearing level, an Administrative Law Judge issued an unfavorable decision on February 15, 2007. (Herbst Decl. ¶ (3)(b), Ex. 2.) On April 12, 2007, Plaintiff filed a Request for Review of the ALJ's decision, and on March 28, 2008, the Appeals Counsel denied Plaintiff's request. (Herbst Decl. ¶ (3)(c), Exs. 3, 4.) In the notice sent to Plaintiff by the Appeals Counsel, the Appeals Counsel advised Plaintiff that she had sixty days to commence a civil action. (Herbst Decl. ¶ (3)(c), Ex. 4.) However, Plaintiff did not appeal the ALJ's February 15, 2007 decision to the United States District Court. (Herbst Decl. ¶ (3)(c).)

Plaintiff protectively filed her third application for supplemental-security income with the Social Security Administration on July 24, 2007. (Herbst Decl. ¶ (3)(d), Ex. 5.) Plaintiff again pursued her claims through the hearing level, and on May 30, 2008, an ALJ issued an unfavorable decision. (*Id.*) On June 2, 2008, Plaintiff filed a Request for Review, and on October 24, 2008, the Appeals Counsel denied Plaintiff's request. (Herbst Decl. ¶ (3)(e), Exs. 6, 7.) As before, in the notice sent to Plaintiff by the Appeals Counsel, the Appeals Counsel advised Plaintiff that she had sixty days to commence a civil action. (Herbst Decl. ¶ (3)(e), Ex. 7.) Plaintiff did not appeal the ALJ's May 30, 2008 decision to the United States District Court. (Herbst Decl. ¶ (3)(e).)

## DISCUSSION

**I.     Standard of Review**

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  A civil complaint will be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To state a cause of action that will survive a Rule 12(b)(6) motion, a complaint must allege a set of historical facts, which, if proven true, would entitle the plaintiff to some legal redress against the named defendant(s) under some established legal theory.  *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980) (noting that "the complaint must allege facts, which if true, state a claim as a matter of law").

In deciding a motion to dismiss, a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant.  *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged.  *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id.* at 556. A complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Id.* at 562 (discussing the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557); *see also Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (stating that although a court liberally construes pro se pleadings, broad and conclusory pleadings will not be saved by "the principle of liberal construction"). Ultimately, evaluation of a complaint upon a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss.

> "If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). The court, however, "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted).

*Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008).

Here, the notices of decision by Defendant setting forth Plaintiff's right to commence a civil action within sixty days from the date of receipt of the decisions are neither embraced by the Complaint, nor are they a public record. (*See* Herbst Decl. ¶ (3)(c) and (e), Exs. 4 and 7.) As such, the motion must be converted to a motion for summary judgment.[2]

Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence, and the inferences that may be reasonably drawn from the evidence, in the light most favorable to the

---

[2] In her response to Defendant's motion, Plaintiff did not dispute any of the facts asserted by Defendant in his initial moving papers with respect to the procedural history of her various applications, other than by making the following conclusory statement: "The defendant claims the plaintiff did not fully exhaust her appeals when in fact she did as the attorneys advised her to do and appealed every unfavorable decision." (Doc. No. 27, Letter by Plaintiff at 3.) As proof of her appeals, she only attaches communications made to the Appeals Council in 2009. (*Id.*, Attach. 1 at 10-15.)

nonmoving party.  *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996).  However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  *DePugh v. Smith*, 880 F. Supp. 651, 656 (N.D. Iowa 1995) (quoting *Anderson*, 477 U.S. at 248).

## II.  Analysis

Plaintiff's *pro se* Amended Complaint in this matter is not completely clear as to whether she is asking the Court to re-open her three prior applications, or whether she only seeks review of the ALJ's decision on her 2008 application, wherein he found that she was entitled to supplemental-security-income benefits, but set her disability-onset date as August 20, 2008.  What is clear though, through Plaintiff's Complaint and her other filings with this Court, is that she believes she is entitled to supplemental-security-income payments back to her alleged disability onset date in 1995.  Because Plaintiff is *pro se*, this Court liberally construes her *pro se* pleading to include both requests.  *See Voytik*, 778 F.2d at 1308.

The factual allegations in Plaintiff's Amended Complaint are not lengthy and this Court sets them forth below in full:

4. The Plaintiff filed application(s) for disability benefits and/or supplemental security income with the Defendant, and after various administrative proceedings has been denied benefits.

. . .

5. During the plaintiff's last court appearance she was represented by James Greenman of Greenman and Toomey. He withdrew the plaintiff's pending case without asking and/or explaining what Mr. Greenman was doing. The plaintiff (Beverly McNamar) never agreed to the withdraw [sic] and has appealed this ruling since the courtdate.[3]

6. In June of 2009 the plaintiff was awarded Supplemental Security Income (S.S.I.), but it only went back to Oct. 1st 2008. In that pending case was the information dating back to 1995 when a Doctor John Jualo had deemed the plaintiff disabled and started a claim for long-term to permanent disability due to medical conditions the plaintiff has dealt with her whole life.

7. From 1995 to 2008 the plaintiff applied numerous times for disability and appealed numerous denials.

8. The plaintiff has used numerous attorney[]s for these cases, all of which did not do adiquit [sic] representation for the plaintiff.

9. The defendant[']s office claims to only have information on the plaintiff dating back to 2004. When the plaintiff has a denial letter from the defendant dated 1995.

10. The defendant failed to do what is required by law by providing disability income to the plaintiff when she did in fact meet all requirements presented by the defendant.

(Doc. No. 14, Am. Compl. ¶¶ 4-10.)

---

[3] It is unclear what "pending case" Plaintiff is referring to here that allegedly was "withdrawn." Plaintiff appealed the present case through all the proper administrative levels, and the Court is unaware of it ever being "withdrawn." If the case from which Plaintiff now appeals was withdrawn, then Plaintiff would not be able to appeal the case to this Court as she has done.

On September 20, 2010, Defendant filed a motion to dismiss (Doc. No. 22), arguing that this case should be dismissed for several reasons. With regard to the 2008 application, which is the application from which Plaintiff has directly appealed from, Defendant argues that Plaintiff's Complaint fails to state a claim. To the extent that Plaintiff is attempting to have this Court re-open and review her prior 2004 and 2007 applications, Defendant argues that the Complaint fails to state a claim because those claims are barred by the sixty-day statute of limitations. With regard to the 1995 application, Defendant asserts that this Court lacks subject-matter jurisdiction to review that matter, because Plaintiff did not exhaust her administrative remedies.

**I.      Claim that the ALJ erred in 2009, by not allowing for an award of supplemental-security income back to Plaintiff's alleged disability onset date in 1995.**

Plaintiff asserts that she is entitled to supplemental-security-income payments back to her alleged disability-onset date in 1995, and that the ALJ, in his June 29, 2009 decision, erred in limiting her back pay of supplemental-security-income payments by ruling that she was only disabled as of August 20, 2008. On June 29, 2009, the ALJ issued a decision that was favorable to Plaintiff, finding Plaintiff disabled as of August 20, 2008, the date she protectively filed her newest application with the Social Security Administration. Plaintiff argues that her disability started well before that date. But even if that is true, the ALJ was not authorized to award supplemental-security-income payments back any further than he did. That is because supplemental-security income does not

become payable until the month after the month in which the application is filed, assuming all eligibility requirements are met. 20 C.F.R. § 416.335. Here, the application that was at issue before the ALJ was filed on August 20, 2008. Therefore, even though the ALJ issued a decision in Plaintiff's favor, supplemental-security-income payments could only be paid from September 2008 forward. This is because the Code of Federal Regulations state that "[i]f you file an application after the month you first meet all the other requirements for eligibility, we cannot pay you for the month in which your application is filed or any months before that month." 20 C.F.R. § 416.335. In other words, the ALJ was limited, pursuant to regulations, from awarding any supplemental-security-income payments for months prior to the filing of Plaintiff's application. Because that application was filed on August 20, 2008, the regulations precluded the ALJ from awarding any supplemental-security-income payments prior to that date. Therefore, the ALJ did not err by not allowing for an award of supplemental-security income back to Plaintiff's alleged disability onset date in 1995.[4] Because Plaintiff's claim fails as a matter of law, her Complaint should be dismissed.

---

[4] Further, as explained below, this Court cannot open up Plaintiff's prior supplemental-security-income applications and determinations. Instead, this Court is limited in its review. It can only review the decision made by the ALJ that flowed from Plaintiff's August 20, 2008 application, because that is the only "final decision" from which Plaintiff has timely appealed.

## III. Claim to Re-open the 2004 and 2007 Applications

Judicial review of decisions on claims arising under Title II of the Social Security Act is provided for in 42 U.S.C. § 405(g) and (h). Section (g) articulates the procedure for commencing a civil action for judicial review:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain review of such decision by a civil action commenced within sixty days after the mailing to him of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g). A "final decision" of the Commissioner may be obtained in one of two ways. First, the Appeals Council may grant the request for review and issue a final decision. See 20 C.F.R. § 404.981. Alternatively, the Appeals Council may deny the request for review and allow the ALJ's decision to stand as the final decision of the Commissioner. *Id.* Here, regarding the 2004 applications, the Appeals Council denied Plaintiff's appeal in a letter dated March 28, 2008, making the ALJ's February 15, 2007 decision denying social-security benefits a "final decision" for the purposes of 42 U.S.C. § 405(g). And regarding the 2007 application, the Appeals Council denied Plaintiff's appeal in a letter dated October 24, 2008, making the ALJ's May 30, 2008 decision another "final decision" for the purposes of 42 U.S.C. § 405(g).

According to the statute, the sixty-day limitations period begins to run "after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). The agency

interprets this provision to mean that the period begins to run on the date that the individual receives notice of the decision. *See* 20 C.F.R. § 404.981. And it is presumed that the applicant receives the notice five days after the mailing of the decision unless there is a reasonable showing to the contrary. *See* 20 C.F.R. § 422.210(c). The sixty-day limitation period may also be extended by the Appeals Council upon a showing of good cause. *Id.*

Accordingly, claimants have a total of 65 days from the date of the mailing of the Appeals Council decision to commence a civil action, except where a reasonable showing disputes the date of receipt or where the Commissioner has extended the time period upon a showing of good cause. This sixty-day period is "a condition on the waiver of sovereign immunity and . . . must be strictly construed." *Bowen v. City of New York*, 476 U.S. 467, 479 (1986). In addition, the sixty-day filing requirement serves to "move cases to speedy resolution in a bureaucracy that processes millions of cases annually." *Id.* at 481.

Here, regarding the 2004 applications, the letter notifying Plaintiff of the finality of the ALJ's decision was dated March 28, 2008. Counting forward sixty-five days, if Plaintiff wanted to appeal that decision to this Court, Plaintiff's Complaint was required to be filed on or before June 2, 2008 (sixty-five days plus one day because the period ran on a Sunday (*see* Fed. R. Civ. P. 6(a)(3)). Regarding the 2007 application, the letter notifying Plaintiff of the finality of the ALJ's decision was dated October 24, 2008. Counting forward sixty-five days, if Plaintiff wanted to appeal that decision to this Court, Plaintiff's Complaint was

required to be filed on or before December 29, 2008 (sixty-five days plus one day because the period ran on a Sunday (*see* Fed. R. Civ. P. 6(a)(3)). Plaintiff's Complaint with this Court was not filed until December 11, 2009. (Doc. No. 1.)

Plaintiff has presented no evidence disputing receipt of the Appeals Council's decisions. Nor is there evidence that a request for an extension to file the Complaint was ever made to the Appeals Council. And further, "the circumstances here do not justify tolling the sixty-day statute of limitations," *Turner v. Bowen*, 862 F.2d 708, 710 (8th Cir. 1988), especially in light of the fact that the Complaint was filed approximately a year late with regard to the decision made on Plaintiff's 2007 application and approximately a year and a half late with regard to the decision made on Plaintiff's 2004 applications. As observed by the Eighth Circuit in *Turner*:

> Generally, equitable circumstances that might toll a limitations period involve conduct (by someone other than the claimant) that is misleading or fraudulent . . . . Equitable tolling thus far has been allowed only in those cases where the government has hindered a claimant's attempts to exercise her rights by acting in a misleading or clandestine way . . . . And this court has recognized the principle that ignorance of legal rights does not toll a statute of limitations.

*Id.* (quotations and citations omitted). In order for Plaintiff to timely appeal the decisions made on her 2004 and 2007 applications, her Complaint was required to have been filed by June 2, 2008, and December 29, 2008, respectively. Even if the claims in Plaintiff's Amended Complaint in this case are construed as constituting appeals of the 2004 and 2007 decisions, the original Complaint was

not filed until December 11, 2009, and thus her claims are untimely and should be dismissed with prejudice.

### III.     Claim to Re-open the 1995 Supplemental-Security-Income Application

42 U.S.C. § 405(g) provides that "[a]ny individual, after any *final decision* of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action" in federal district court.  42 U.S.C. § 405(g) (emphasis added).  The Act further states, "No findings of fact or decision of the [Commissioner] shall be reviewed by any person, tribunal, or governmental agency except as herein provided."  42 U.S.C. § 405(h).  The Supreme Court has concluded that the term "final decision" is a "statutorily specified jurisdictional perquisite."  *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975); *Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992).

The Social Security Act does not define the term "final decision," instead leaving that definition to the SSA regulations.  *Weinberger*, 422 U.S. at 766.  In order to obtain a "final decision," the regulations provide that a claimant must complete a four-step administrative-review process.  20 C.F.R. § 404.900(a).  First, a claimant seeking disability benefits receives an initial determination.  If the claimant's initial application for benefits is denied, he or she may request reconsideration of the decision.  20 C.F.R. § 416.1409(a).  A claimant who is dissatisfied with the reconsidered decision may obtain administrative review by an ALJ.  20 C.F.R. § 416.1429.  Finally, if the claimant is dissatisfied with the ALJ's decision, he or she may request review by the Appeals Council.  If the

16

Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). If the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision. *Id.* If a social-security claimant fails to request review from the Appeals Council, there is no "final decision." *Id.* at 107. If a claimant does not exhaust the previously stated four-step administrative-review process, the claimant cannot appeal to Federal Court. *See* 20 C.F.R. § 404.900(a) ("When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court.").

While the exhaustion requirement is jurisdictional, it can be waived by the Commissioner or by the Courts. *Titus v. Sullivan*, 4 F.3d 590, 592 (8th Cir. 1993); *Schoolcraft v. Sullivan*, 971 F.2d 81, 85 (8th Cir. 1992). In order to be entitled to a waiver of the exhaustion requirement, such that subject-matter jurisdiction exists over the case, a plaintiff must show that: (1) her claim is collateral to her claim for disability benefits; (2) irreparable injury will follow; and (3) exhaustion would otherwise be futile. *Titus*, 4 F.3d at 592 (citing *Bowen v. City of New York*, 476 U.S. 467, 484-85 (1986)). A claim is collateral to a claim for disability benefits if the plaintiff does not seek benefits from the court, but rather, challenges the procedures by which their claims were processed. *Schoolcraft*, 971 F.2d at 86.

Here, Plaintiff filed her first application for supplemental-security income on April 11, 1995, which was denied on June 23, 1995. (Herbst Decl. ¶ (3)(a), Ex. 1.) Before filing the instant action in this Court in 2009, Plaintiff did not timely request reconsideration of that 1995 decision, and did not timely seek a hearing with an ALJ or review by the Appeals Council. (*See* Herbst Decl. ¶ (3)(a).) Therefore, because neither an ALJ nor the Appeals Council has issued a decision with respect to Plaintiff's 1995 application, there is no "final decision" as to the 1995 application for this Court to review. In other words, this Court cannot review the initial denial of Plaintiff's 1995 application because she did not exhaust her claim with regard to that application with the Social Security Administration; therefore, this Court does not have jurisdiction to review the denial of the 1995 application. In addition, Plaintiff appears to seek benefits from this Court and she is disputing the Social Security Administration's decision that she was not entitled to disability benefits back in 1995. Therefore, the claims in Plaintiff's Amended Complaint are not collateral to her claim for benefits, and she has not made the requisite showing to support a waiver of the exhaustion requirement. In sum, because this Court lacks subject-matter jurisdiction over any claim to re-open Plaintiff's 1995 application, this Court recommends that Defendant's motion be granted.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss (Doc. No. 22), as converted into a motion for summary judgment by this Court, be **GRANTED**; and

2. The case be **DISMISSED WITH PREJUDICE**, and judgment be entered.


Date: December 15, 2010     __s/ Jeffrey J. Keyes_____
                            JEFFREY J. KEYES
                            United States Magistrate Judge


Under D.Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 29, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within **fourteen days** after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.